Please be seated. Thank you. Please call the next case. 317-0017, People of the State of Illinois, Appellee by Stephanie Raymond v. Darnofsky, Appellant by Daniel Niemann. Counsel, there has been a motion to cite additional authority by the defendant appellant, I believe, correct? That's correct. Okay. We will grant that motion, but that motion is granted on these conditions. Not that this authority is to be argued or cited before us today, but that it be done in written form in argument, and you would be allowed seven days to submit to the court written argument on your additional authority, and then Appellee would be permitted seven days to respond and follow with the court in response to that argument citing that additional authority. Thank you. If that's acceptable to the panel, and hearing no objections, I think it's the order of the court then in regard to your motion. Okay. Very good. Counsel, you may proceed. Thank you. May it please the court, counsel? My name is Nate Niemann. I'm here on behalf of the defendant Darnofsky. This case revolves around the denial of motion to suppress that was filed in the trial court. The issue in the motion to suppress, as is the issue here, was whether controlled by occurring in a car across town from the defendant's home can constitute probable cause to search his home. And this case, in some respects, is sort of a duel between People v. Lanyon, which is a first district case, and People v. Lyons, which is a fourth district case. And in People v. Lanyon, the appellate court, the first district, held that such a controlled by does not constitute probable cause to search a home. In People v. Lyons, it held that it did. Now, the interesting thing in looking at this issue and looking at how this issue fits in with the current case law is to kind of look at how that case law developed. So there's two cases, as I said, that mainly discuss this issue. And the first case was Lyons. Lyons was a fourth district case that relied heavily on a first district case called People v. Beck. And I mention where that case came from because it becomes important later on. In Lyons, they were basically saying that the nexus that is to be drawn from the controlled by occurring on the street and the home can be inferred from a police officer's knowledge that instruments of crime, in this particular case, instruments of drug sales, are commonly found in a drug seller's home. And so it is that position that the court takes, and they find that that nexus can be supplied by an officer's inference. And as long as he states that in the warrant, then that connection can be drawn. Now, Beck case was a first district case. And the reason that that is important is that a few years later, the first district, in some respect, reverses course in People v. Lyons. And there's actually an important quote in that case that I'd like to draw this court's attention to. And it says that, to accept a single drug sale conducted from a car by a defendant as probable cause for the search of the defendant's residence would nullify the rule of law that disavows bare bones affidavits to support the issuance of a search warrant. So for a while, there was Lyons, and then there was Lennon. And then there was a first district case called People v. Rojas, which, under somewhat different factual circumstances, takes the same position that it does in Lyons. So, in fact, in Rojas, the court criticizes the type of inference that the Beck court relied on in drawing the nexus between the two places. And I think that that's important because it shows that the Lyons case, which is principally the case that the state is relying on here, is an outlier in the current case law that concerns this subject. Well, where are we in our district? Well, Your Honor, the case that is concerned in our district is one of the cases that I cited in my motion to cite supplemental authority. Okay. And I don't know if the court wants me to go into that right now or not, but... Well, are you prepared to talk about that case now? No, Your Honor. Okay, thank you. We'll stay with the first case. So, without going into it, the third district has taken a position on this case, and I will address that in my supplemental briefing. The important thing in these Lyons cases, especially as it pertains to this particular case, is that there's a somewhat bright-line rule that's basically saying that, for the most part, criminal activity that's occurring outside the home is not going to be probable cause to search the home unless there's some sort of nexus that can be drawn from the criminal activity outside to the home itself. And where this case falls in that line of cases, it's factually similar to some but not others, and that's described in greater detail in the briefs. But what I wanted to point out in this oral argument is the concept of the intervening location. And the intervening location, in this case, is a car. So, the defendant goes out from the house, gets into the car, goes to the drug sale. So, there's actually a place that he goes between the house and between the drug sale. And it's our position that the intervening location disrupts the nexus between the drug activity that occurs across town and the defendant's house. It's the state's position that, not only at the trial court but here in the appellate court as well, that because the officers maintained constant surveillance on the defendant, they called up the defendant. They had a confidential source call up the defendant, come meet me across town for the drug deal. So, they got eyes on the house. He comes out of the house, gets in his car, drives to the place that he's supposed to go, does the drug deal. And they make sure that the confidential source got the money and that kind of stuff. So, you're saying the car destroyed the nexus between the house and the dealer? I am, Your Honor. So, if indeed the same conversation took place and the dealer said, meet me down at the corner gas station, walked out of the house and the dealer went down,  I think that there would be more of a nexus if there was. We are not prepared to concede that simply watching somebody exit the house and go to a place to commit a crime is itself going to be the nexus. But our position is, as it relates to this particular case anyway, is that if there's an intervening stop, basically, and if you look at the case law that discusses these types of situations, the court makes that important distinction. They'll say, well, you know, he didn't stop off to go here or stop off to go there. We saw him, you know, go from one location to another uninterrupted. There was no opportunity for him, say, for instance, to pick up drugs or something else in another location. And in this case, there is, and it's his car. And in this case, they have the search warrant for his person, his car, and his house. So, they don't know where the drugs are. They think it's in one of those three places. Is it unreasonable to assume, well, it's the house, the car, what's the third place? The person. Well, the person was in the car and in the house. That's correct. Would it be unreasonable to think that they're likely to be in the house for drugs? Is that an unreasonable thought? Well, it's not necessarily a matter of reasonableness. Well, that's exactly what the probable cause is all about, isn't it? Well, I think that probable cause requires some evidence that some crime is being committed in some place. I mean, one of the things that I can't remember which one of the cases that I've cited in my brief talks about this is that the Beck case was actually talking about basically the finding probable cause to go into a criminal's house, basically when he commits a crime. So, in other words, they're concerned from a policy standpoint of being able to get a search warrant for a criminal's house just because he committed a crime, just because it's reasonable to think that the instruments of his crime would be in his house because maybe that's where he came from. Well, if it is reasonable to think that, that's the end of the discussion, isn't it? I mean, the United States Supreme Court, if I'm not mistaken, has said, the officer doesn't have to be right, he's just got to be reasonable. And he can be wrong as long as he's reasonable. Isn't that what probable cause is? I would agree that that's a fair assessment of probable cause, but I think that as it relates to this particular type of circumstance, if that was sort of the touchstone, then his reasonableness would only be limited by his imagination. Well, what if you had somebody came in and told the coppers, hey, look, Joe's got a pizza parlor over there, and he's selling dope out of it. If you call and kind of cover it up, he'll bring you the dope, but you've got to buy a pizza, too. And so they call and order some pizza and drugs, and he brings them the pizza. Now, could they just search? Would they have probable cause if they busted him on a controlled buy in that situation to just search the pizza delivery truck? Or could they go get a warrant for Joe's Pizza Palace? Well, I guess it depends on the way in which the pizza's going to be delivered. I mean, if it's delivered, you know, by foot or by bicycle or by— It's a Papa John's. Well, I think that—respectfully, I think that you would need to have probable cause related to both the vehicle that transports it and the pizza place. And I think that it really kind of depends on what kind of probable cause that you have. Well, wouldn't the answer be that it's delivered with a pizza and the pizza's manufactured in the business? That's possible. I mean, which is distinguished from your case. Well, I'm assuming that the drugs aren't in the pizza itself, but in the delivery guy's pocket. He hands you the pizza, and he hands you the drugs, and you hand him the money. So it should be clearly that the drugs were stuck inside the pizza, like a file on a prison cake or something. But I'm just saying, what's—he calls the guy who orders drugs. The guy will at least watch him leave his house, jump in his car, drive down there and deliver the drugs. I say, what's unreasonable about assuming that there's evidence of that crime in the house, where he came from just before he went to deliver the drugs, and it's his house? Well, I think that with your pizza parlor analogy, it's a little bit different from the home, because there's heightened constitutional protections that pertain to a person's home versus a pizza parlor. And I think that this is kind of at the core, from a policy concern standpoint, what the courts are concerned about, is that they don't want the police to be able to just willy-nilly get into people's home by simply saying that they think that the instruments of crime that this person was using somewhere outside the home could be located in the home. And that is something that I would ask the court to keep in mind. But we're talking about heightened scrutiny, and I agree with you, but that's why the warrant requirement is even more important in a home than in a pizza joint. But even so, as far as to whether or not there's no sliding scale of probable cause as for pizza parlors and houses, are there for homes? There's no sliding scale of probable cause, that's correct. So either you've got probable cause, whether it's a home or a pizza parlor, or you don't have probable cause. That's correct. But it also must be particularized to the place that's going to be searched. And that's really what, at bottom, this case is all about. So you're saying, if indeed the confidential, whatever, person walked in the house and then walked out, that that would be sufficient? Absolutely. And, in fact, that's a common basis for warrants. They will go in, do the controlled by in the house, and they will come out. The agents will have the house under surveillance while the confidential source goes in, buys the drugs, gives the agents the money or the drugs, and they're able to get a warrant for the person and for the house. But in that particular instance, the house is, in many ways, an instrument of the illegal activity itself. It's housing it. But in this case, it's merely a place that it actually is. It's actually the locus of the criminal activity. It is. And that's different from a case like this. And that is perhaps why the Lenin Court said that, quote, it was unaware of a published decision where a drug transaction on the street provides probable cause for the search of the drug seller's residence. There is something that's particularly troubling from a Fourth Amendment perspective of being able to search a house when there's no connection to criminal activity to that house other than the criminal leaving it. Well, but this guy's a drug dealer, right? That's, yeah. He's alleged to be a drug dealer. Okay, so he's, so he got this drug. And what the drug dealers have that they use, they got to package this stuff for sale. They weigh it and all that stuff. And so they got scales and packaging material and that kind of stuff. And that's not stuff they can carry in their pockets and generally not on the front seat of their car or in their car, or their way in this dump to go out and sell to make a living. Well, Your Honor, I think it depends on what kind of drug. Certainly a meth lab is not going to fit in a vehicle. But, you know, small-scale baggies, cash, those kind of things that are typically used to fetch with a drug sale would fit in the console of a car. And I think that in this particular case, there's good reason for that. And the fact that... Well, again, but let's go back to probable cause. Again, the fact that the copper may be wrong. There isn't. He's got his scales in his console and his baggies in the glove box and that. The fact that he's wrong doesn't defeat probable cause, does it? It's a question of is it reasonable to assume the tools of this fellow's trade are in his home when he just walked out of it before he made the sale? And... Well, I think that that is potentially conflating two different concepts. One would be probable cause, whether a crime occurred. Certainly if he believes that criminal activity is occurring, that's probable cause. But that's only the first step. The second step is determining whether there's probable cause that's connected to the place to be searched. And that's really the issue here, is that there wasn't anything other than the fact that the defendant was leaving from that house that would give anyone reason to believe that there would be anything illegal in it. Okay. So your position, it was unreasonable to assume that there was further evidence of drug dealing in that house. That's correct. And there's some additional facts. Did the house belong to him, or did it belong to the girlfriend? The... Well, I mean, as far as who it actually belonged to, who the title was in, I don't think that there was any evidence that he was on the title. We would concede for purposes of this issue that the house was functionally his, because there's all kinds of things that were connecting him to the actual house. There was a domestic violence incident that had occurred there two years prior. The car that he was driving to the drug deal was registered to that house. That's not what I think is a determinative issue, whether it's his house or not, because the case law is saying that there isn't any case law that a publicist's decision where a drug transaction on the street provides for probable cause for search of the drug seller's residence. So the rule is already contemplating that the residence is his. If I'm understanding you correctly, the thrust of your objection is that they're making an inference that there may be drug paraphernalia at that house because he had drugs that he delivered. And I guess that what I'm suggesting is that maybe the inference is weakened by the fact that the house and the car are not actually registered to him. I can see that, and I think that part of it is that there's sort of a spectrum from inference to pure conjecture. And I think that you get closer to sort of a reasonable inference, which this is something that the case law says that the issuing judge can make, to something that's pure conjecture, which is something that the case law also condemns. So it is, you know, it's one thing to think that there is drug activity that's going on at a house, for instance, because they have higher utility bills for, you know, they might have grow lights or something in there, or there's some sort of smell that's emanating from there. There's an increase in unusual activity of people coming and going, things that are out of the ordinary. Those are the types of things that would be a reasonable inference that the house was connected to illegal activity. Whereas on the spectrum of reasonable inference to conjecture, it's conjecture to think that just because this drug dealer lives in this house that he's going to keep the instruments of his trade in the house. And in this particular case, he was living at this house with two young children. And obviously that's not, you know, the best parental role model, but he could at least mitigate some of that by keeping these dangerous things away from the children and putting them in the car. If every deal that he does... Or in another locked room of the house. It's possible. Or in a drug workshop. And perhaps that drug workshop is not on his property. And, you know, I mean, he's not for, to sort of analogize this to a legitimate case, he's not working out of his home. He's just leaving it. Well, he gets called. He's at home when he gets a call. He leaves there and gets in his car. And so there's some evidence that he was working out of his home because that's where he left when he made the drug sale. I mean, if the guy had called him on his cell phone and he's leaving work or leaving some saloon and meets a guy in hands and drugs, you'd have another case. But in this case, it fell off. Well, I think that kind of along those lines, if you think of along those lines of whether he's working out of his home, if you think of sort of like a plumber who keeps his van maybe in his driveway every night that's got all of his tools. He gets a call in the middle of the night that he's got to go unclog a drain. Then he gets into his van. He goes to the location. He uses his tools to fix the problem. He gets in his van and he goes home. He doesn't necessarily take any of those tools inside with him. He's not fixing the problem out on, you know, fixing the clog from his house. He's going into his vehicle in this intervening place and then going to his workplace essentially. You were talking about intermittent stops along the way. You know, gee, if it had stopped here, it would have stopped there. Well, the fact that he didn't make any of those intermittent stops, wouldn't that even be stronger evidence that the dope was in the house before it walked out? It could be, but I think that the actual location, the actual act of getting in the car is a stop in and of itself. And it's unlike if he had just walked down to the corner and effectuated a drug deal under surveillance at the cops and then walked back. It would be reasonable under those circumstances for an officer to think that the drugs must have originated at least originally from the house because there was no other place that they could have come from. And whereas... How about the pocket of his coat when he was down at the Legion Mall? Did he just happen to stop by the house? Well, I mean, I think that that certainly complicates things when there's, you know, different trips and different locations and everything that he goes to, if that's what you're saying. Well, no, no, I'm just saying that where were the drugs? In your hypothetical, if they were in the pocket of his coat, how does that go back to the house? Because what you're saying is the drugs could have been in the car. And so it's reasonable to go and get a warrant to search the car. Okay? The car is a conveyance of drugs, correct? Yes. What about the coat he's wearing? The drugs are in the pocket. Isn't the coat a conveyance? It could be, but the coat would be covered by a search warrant of his person. Okay. So... One minute, please. So I think that that is sort of distinguishable from the case that we have here, which is just focused on whether the illegal activity that's occurring outside of the house is something that can provide a probable cause to search the house. So unless there are any other questions, I would like to save my time for rebuttal. You'll have five minutes for rebuttal. Thank you. I have one question. Oh, I'm sorry. I have a question. You've talked about appellate court cases. Most of you all have cited appellate court cases in your briefs. We now have a case that the Supreme Court has taken, which presumably is going to answer all of this. Is there any thought that maybe we should stay our decision in this case? I actually had given that some thought. That was one of the cases that I had cited in my motion to cite supplemental authority because I just found out yesterday that the Supreme Court had granted PLA on that. I don't think that that would be a bad idea. My client is serving a long sentence, and I think that in the event that this court affirmed the trial court and that case was still pending, then we would have to file the PLA, and it could potentially come back. So I don't think that I would have an objection to this court doing that. I think that might be the cleaner way to handle it. Maybe you could address that, each of you, in your supplemental briefing. And once you all address that as far as staying in this little supplemental offer you're going to offer. What's that? Whether this case law that we're not discussing today is secret is a basis for staying our decision pending a Supreme Court decision, you might want to address that, your thoughts on that, and whatever offer you're going to file in the next seven days. I can certainly do that. Okay. Well, I'm a little beefed down here. I can't carry the box very softly, so I can't hear everything. I would be glad to do that. I think counsel both understands that, right? Yes. Very good. Okay, you have time to reply. Thank you. Thank you. Counsel, you may respond. May it please the Court, Your Honors, Counsel, my name is Stephanie Raymond. I represent the people of the state of Illinois in this matter. Just a few things I think it's important to note before we start or before I address some of his concerns. The trial judge may make reasonable inferences, as we've discussed, that can establish a nexus between the criminal offense and the place to be searched and that any gap of information can be filled by the acne officer's experience that drug dealers ordinarily keep profits, records, and their supply in their homes. Marginal cases should also be resolved in favor of upholding the search warrant. The couple of cases that counsel addresses, Pupil v. Linnion has an actually different factual scenario than is present here. In that case, there were two separate search warrants issued on the same day by the same judge. May I ask this question? Do you consider this a marginal case? This case? Not our case present? No. Oh. So in that case, the second search warrant was executed after the first search warrant did not uncover any contraband. The court in that case took issue with that fact, that there were two warrants on the same day by the same judge, one of which was only given after nothing was found. In that case, there was no controlled by, there was no direct observational evidence, as there was in this case of defendant leaving any residence and going to a controlled by as there was here. And the court found that that was, you know, there wasn't enough for the warrant. In the Pupil v. Rojas case, again, that's also, there was no direct observational evidence that case involved interception of a conversation. There was no determination of when and where any drugs would be purchased. And, again, there was no direct observational evidence of defendant leaving any residence in that case and going to make a buy, whereas here there was. The confidential source was observed by police calling. The defendant was then observed by police leaving his house, getting in his car, and driving directly to the buy. So it's the people's position that there was probable cause for the search of defendant's residence based on the affidavit that laid out all of this information. If you're tailing the defendant and the defendant goes to three or four places, how far does the chain go back? In that case, it would be, I mean, obviously different. If he goes three or four different places, then, you know, that sort of blurs the lines a little bit as to where, you know, he would have kept, he may have kept, you know, drugs or, you know, evidence of his criminal activity. But, again, in this case, he's seen driving directly to the buy, you know, that was set up by both the confidential source and him over the phone. So... So what's the evidence that there was anything in the house as opposed to just all of it being in the car? Just, I mean, there was nothing that directly says this is in the house. However, based on, you know, the affiant officer's knowledge, it can be based on that, that, you know, drug dealers ordinarily keep these kinds of things in their homes. It's reasonable to think that a drug dealer would keep profits, supply, records, anything in their homes if that, I mean, that's where they are all the time, that's where they live, you know, so... But reasonable inferences have to be based on facts, particularized facts. So, you know, what is there here to support an inference? It's the people's position that in this case, it's the direct observational evidence that supports that, that he was seen. But there wasn't any direct observational evidence related to the house, other than that he walked out the door. Is there some case law that says that an officer can, as an affiant, state it in his experience, et cetera, et cetera? I did... So it's not direct observational statements as to the particular case they're seeking a warrant for? I did quote that quote where the gap of information can be filled based on their experience came from People v. Lyon quoting People v. Beck. And Lyon was the case that we cite that's the same factual scenario where the defendant is seen leaving the house. It's to make a controlled buy that had been set up between the two. Lyon's did involve a third party, which is... We don't have a third party here. It's directly from a confidential source, the defendant, so... That would be... If there are no further questions, the people would just... Go ahead. The people would just ask that you adjourn the trial. Thank you. Thank you. Counsel, you may reply. Just briefly, I think the lending case acknowledges twice, as the state mentions in their brief, that there are unique facts. But if you look at... If you kind of set aside the disapproval of getting the multiple warrants from the same judge issue and that kind of thing and look at the actual probable cause they used to try to get that search warrant, or, in fact, they did, they are actually quite similar to this case. And I do want to kind of circle back to the Beck case as well, because Lyon's is based almost entirely on Beck. Because Beck is the one that says that you can draw that nexus through the detective who seeks the search warrants experience that instruments of drug sales are found in the home. What's interesting is that if you actually look at Beck and where that comes from, it comes from the citation to a treatise by Professor Lefebvre. Lefebvre. Lefebvre. It does not come from the citation to a Supreme Court case, to another appellate court case. It's not a citation to Illinois law or Supreme Court law. It's a citation to a treatise. And it's no wonder that... The treatise is a distillation of other baseball, isn't it? I think that that's sort of the general purpose of the treatise, but I think that it's telling, though, that the same exact district departs from that later on. Just, I think it would be 11 years after Beck, because Lennon was decided in 2010, and then Rojas was decided in 2013. So clearly the first district's view of this issue has developed over time. And I don't think that their later decisions are in concert with the earlier decision of Beck, on which lines relies, on which the state relies. Let's not assume that there's a single point of view up in the first district, any more than there is on the third. One panel of an appellate court can't overrule another panel. All they can do is disagree. I disagree with that, I'm not following. I understand. I understand that. I mean, in the way that I see it, those decisions are the expression of that district's opinion on a certain legal issue. And I would submit the argument that they're an expression of that panel's view of the issue, or what it's worth. Thank you. So for the reasons that I've stated today and the reasons that I've outlined in my brief, I would ask the court to vacate the defendant's conviction and sentence and remand the case to the trial court. Very good. Thank you, counsel, both for your arguments in this matter. We take them under advisement. This is a sufficient issue. We look forward to your submissions on those cases that were moved to be cited and argued, and the court will, of course, consider those arguments in due course. The court will stand in recess until 9 a.m. tomorrow morning. Please rise. This court is in recess.